# EXHIBIT A

KATHERINE G. HOUGHTON, ESQ. (02690-1983)
LAW OFFICE OF KATHERINE G. HOUGHTON
87 S Farview Ave Ste 2
Paramus, NJ 07652-2656
(201) 587-1414
Attorney for Plaintiff

|  |  |
|---|---|
| NICHOLAS ELEZOVIC, | : SUPERIOR COURT OF NEW JERSEY |
|  | : LAW DIVISION: HUDSON COUNTY |
|  | : DOCKET NO. HUD-L |
| Plaintiff, | : |
|  | : |
|  | : |
|  | : |
| vs. | : |
|  | : |
| MOTOR COACH INDUSTRIES, | : **COMPLAINT & JURY DEMAND** |
| INC., PETER PAN BUS LINES | : |
| INC., WABCO HOLDINGS INC., | : |
| JOHN DOES 1-10 (fictitious | : |
| names), and ABC COMPANIES 1- | : |
| 10 (fictitious names), | : |
|  | : |
| Defendants. | : |

Plaintiff, Nicholas Elezovic, residing at 17 West Cross Trail, County of Fairfeld, and State of Connecticut, complaining of the defendants, hereby say:

## FIRST COUNT

1. On or about December 15, 2019, between the hours of 6 and 8 pm, plaintiff Nicholas Elezovic, while performing his duties as a bus driver for Peter Pan Bus Lines Inc. (hereinafter "Peter Pan"), was operating a motor coach on or about County Avenue near the intersection with Paterson Plank Road, in Secaucus, in the county of Hudson, and in the State of New Jersey.

2.    Upon information and belief, the bus that Plaintiff was operating was designated as coach 785 by Plaintiff's employer Peter Pan.

3.    Peter Pan is a registered corporation with the State of New Jersey, having a registered agent at Corporation Service Company, 830 Bear Tavern Road, West Trenton, NJ  08628-1020.

4.    At or about that same time, defendant Motor Coach Industries, Inc. (hereinafter "MCI") was a registered business in the State of New Jersey, engaged in bus coach manufacturing; bus part and products manufacturing; bus tool retail; mechanical installation support; bus repairs, conditioning, and maintenance; and other commerce related to buses.

5.    MCI's registered agent is the Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ  08628.  MCI is headquartered, upon information and belief, at 200 East Oakton Street, Des Plaines, Illinois.

6.    At all times relevant herein, MCI manufactured, designed, assembled, produced, created, inspected, sold, distributed, placed into the stream of commerce, or otherwise caused the production and/or sale of bus parts and/or products that were used and installed in the motor coach being operated by Plaintiff at the aforementioned time and place, which parts, upon information and belief, included **but are not limited to** bus parts in the front end, front end bellows, the kneeler,

front axle, front end suspension, a pressure sensor (part number 04-31-1044, upon information and belief), and/or an Electronically Controlled Air Suspension (hereinafter "ECAS") system.

7.   MCI owed a duty to employ reasonable care, skill and diligence in its manufacture, design, assembly, production, creation, inspection, sale, distribution of all its bus parts and/or products or otherwise cause the production and/or sale of reasonably fit, suitable, and safe products, free of defect, danger, and harm to consumers, including all bus passengers and bus drivers.

8.   MCI was so negligent and careless in some or all of these duties, and was otherwise strictly liable in tort, as to manufacture, design, assemble, produce, create, inspect, sell, distribute, place in the stream of commerce or otherwise cause the production and/or sale of bus parts and/or products that were not reasonably fit, suitable, and safe for its intended or reasonably foreseeable uses, due to manufacturing defects, failure to adequately warn or instruct, and/or design defects.

9.   Plaintiff further alleges that the risks and/or dangers of the parts and/or products outweigh the product's usefulness to such a degree that a reasonably careful manufacturer or seller would not have allowed the product to

be used or distributed at all in its then-present form.

10.   Plaintiff further alleges that safe and reasonably feasible alternatives to defendant's product exist such that a reasonably careful manufacturer or seller would not have allowed the product to be used or distributed at all in its then-present form.

11.   Plaintiff further alleges that the bus parts and/or products were to defendants self-evidently not reasonably suitable and safe and fails to perform, contrary to the user's reasonable expectation that it would safely do the job for which it was manufactured and/or sold.

12.   Defendant also owed a duty to provide adequate warnings about the dangers of its bus parts and/or products; to provide adequate instructions; to communicate sufficient information on the dangers of the product and how to use it safely; and to inform about dangers and/or complaints from other users, sellers, and/or distributors of any dangers of the parts and/or products to see that it is reasonably fit for the purpose for which it is intended.

13.   Defendant breached some or all of these duties to manufacture, sell and/or design a safe product without defects and to warn and/or instruct consumers.  Defendant did so in a negligent and careless manner, or is otherwise strictly liable in tort for plaintiff's injuries and damages.

14.   As a direct and proximate cause of the negligence and strict liability in tort of defendant MCI, Plaintiff sustained serious and permanent personal injuries including but not limited to his hip and back, requiring significant medical treatment and incurring significant medical expenses and lost time from his usual activities and other losses, when the motor coach Plaintiff was operating suddenly and violently dropped downward.

WHEREFORE, Plaintiff demands judgment against defendant, MCI, jointly and/or severally, for compensatory damages, interest, costs of suit, and any other relief deemed appropriate by the court.

**SECOND COUNT**

1.   Plaintiff repeats the allegations of all previous counts as if set forth herein at length.

2.   Upon information and belief, MCI directed, advised, troubleshooted, provided technical & mechanical support & assistance to co-defendant Peter Pan with respect to the installation, servicing, repairing, diagnosing, replacement of bus parts and/or products, which parts included **but are not limited to** bus parts in the front end, front end bellows, the kneeler, front axle, front end suspension, a pressure sensor (part number 04-31-1044), and/or ECAS system.

3.   Co-defendant Peter Pan knew about mechanical

problems with said bus for over a year and a half leading up to Plaintiff's accident, and MCI was previously called to assist with troubleshooting the problems with the bus prior to Plaintiff's accident, which included complaints that the bus and/or its suspension was dropping or dipping and/or was otherwise in need of repairs. Peter Pan's subrogation carrier has advised that Peter Pan engaged MCI sent technical service to assist with troubleshooting ongoing problems with the bus, which had caused it to drop suddenly and violently.

4.   MCI owed a duty to direct, advise, troubleshoot, provide technical & mechanical support & assistance to co-defendant Peter Pan in a reasonably safe manner, especially with respect to the installation, servicing, repairing, diagnosing, replacement of bus parts and/or products, including but not limited to repairing the violent dropping, dipping and/or bouncing problems in this bus.

5.   MCI breached some or all of the foregoing duties when it negligently directed, advised, troubleshooted, provided technical & mechanical support & assistance to co-defendant Peter Pan in an unreasonable and unsafe manner.

6.   As a proximate cause of MCI's negligence, Plaintiff sustained serious and permanent personal injuries, including but not limited to his hip and back, requiring significant medical treatment and incurring significant medical expenses

and lost time from his usual activities and other losses, when the motor coach he was operating suddenly and violently dropped.

WHEREFORE, Plaintiff demands judgment against defendant, MCI, jointly and/or severally, for compensatory damages, interest, costs of suit, and any other relief deemed appropriate by the court.

<u>**THIRD COUNT**</u>

1. Plaintiff repeats the allegations of all previous counts as if set forth herein at length.

2. At all times relevant herein, MCI sold, distributed, selected, marketed, endorsed, guaranteed, warranted (expressly or implicitly), or otherwise placed into the stream of commerce bus parts and/or products that were being used and had been previously installed and/or replaced in the motor coach that Plaintiff was operating at the time of the subject accident.

3. MCI owed a duty to properly sell, distribute, select, market, endorse, guarantee, warrantee (expressly or implicitly), or otherwise cause the sale of a reasonably fit, suitable and safe product, free of defects, danger, harm, and deleterious effects to consumers with proper instructions and warnings.

4. MCI was so negligent and careless in some or all of these duties, and was otherwise strictly liable in tort, as

to sell, distribute, select, market, endorse, guarantee, warrantee (expressly or implicitly), or otherwise cause the sale of a unsuitable, unsafe, defective, dangerous, harmful, and/or deleterious product, without proper warnings.

5. As a proximate cause of MCI's negligence, Plaintiff sustained serious and permanent personal injuries, including but not limited to his hip and back, requiring medical treatment and incurring medical expenses and lost time from his usual activities and other losses, when the motor coach he was operating suddenly and violently dropped.

WHEREFORE, Plaintiff demands judgment against defendant, MCI, jointly and/or severally, for compensatory damages, interest, costs of suit, and any other relief deemed appropriate by the court.

## FOURTH COUNT

1. Plaintiff repeats the allegations of the previous counts as if set forth herein at length.

2. At all times relevant herein, Peter Pan owed a duty to: (a) refrain from knowingly and deliberately exposing employees to hazardous work condition; (b) to refrain from egregious conduct, deceptive acts, and willful failure to remedy know safety hazards; wanton and intentional failure to warn of dangers; (c) to refrain from fraudulently concealing hazardous work conditions from employees; (d) to install

adequate safety equipment; (e) to comply with all state and federal safety laws, including but not limited to the New Jersey Worker Health and Safety Act, N.J.S.A. 34:6A et seq.

3. Peter Pan breached some or all of these duties when it; (a) knowingly and deliberately took a motor coach out of service, deeming in unsafe for their customers, and directed Plaintiff to drive the broken-down motor coach from New York City to Secaucus, so that Peter Pan could avoid the costs of towing the bus and so Peter Pan could free the extremely busy gate at its bus depot in New York City, all to increase its revenues from its customers at the detriment and peril of its employee's safety; (b) engaged in the egregious conduct, deceptive acts, and/or willful failure to remedy known safety hazards; wantonly and intentionally failed to warn Plaintiff of the dangers of operating said bus, which it knew was so dangerous that it pulled from service for customers, but deemed it an acceptable monetary venture to endanger the wellbeing of one of its employees to direct Plaintiff to drive the bus without any passengers on it out of the bus depot in New York City to Secaucus; (c) fraudulently concealed the documented history of the bus breaking down, experiencing violent dropping downward, including but not limited to the malfunctioning bus parts, products, and/or pressure sensors which caused the front end of the bus to drop suddenly and

violently while Plaintiff was operating it, all the while concealing the known hazardous nature of the work assignment from Plaintiff; (d) failed to install adequate safety equipment; and (e) otherwise failed to comply with all state and federal safety laws, including but not limited to the New Jersey Worker Health and Safety Act, N.J.S.A. 34:6A et seq.

4.   Plaintiff was given no meaningful choice in the manner in which he was to complete the task of deadheading the broken-down bus from New York City to Secaucus and had no ability or opportunity to independently assess the condition of the parts in the front end, front end bellows, the kneeler, front axle, front end suspension, a pressure sensor (part number 04-31-1044, upon information and belief), and/or an ECAS system, which defective and dangerous condition Peter Pan concealed from Plaintiff.

5.   Upon information and belief, numerous drivers had reported the known, documented dangers of this bus to the employer for at least a year and a half leading up to Plaintiff's accident; said drivers reported dropping of the bus downward, problems with the front axle, defects to the kneeler, and/or front-end "bouncing." Yet, the employer repeatedly returned the bus to the service to increase its revenues, and failed to repair the known dangers.

6.   As a proximate cause of Peter Pan's conduct, Peter

Pan created a hidden and concealed **substantial certainty** of injury, which was well outside of the everyday work hazards of operating a commercial motor coach.

7.   As a proximate cause of Peter Pan's negligence, Plaintiff sustained serious and permanent personal injuries including but not limited to his hip and back, requiring significant medical treatment and incurring significant medical expenses and lost time from his usual activities and other losses, when the motor coach he was operating dropped suddenly and violently.

WHEREFORE, Plaintiff demands judgment against defendant, Peter Pan, jointly and/or severally, for compensatory damages, interest, punitive damages, costs of suit, and any other relief deemed appropriate by the court.

### FIFTH COUNT

1.   Plaintiff repeats the allegations of the previous counts as if set forth herein at length.

2.   At all times relevant herein, Peter Pan employed Plaintiff as a bus driver.

3.   Plaintiff notified Peter Pan of the subject accident on 12/15/19, and the employer's workers' compensation carrier, the Hartford Underwriters Insurance Company asserted a section 40 lien, pursuant to N.J.S.A. 34:15-40, as early as 1/21/2021, reserving a lien against any recovery in a third liability

suit, thereby evincing its knowledge and awareness of liability of co-defendants.

4. Plaintiff, through counsel, has demanded all the work orders, all invoices for the bus parts replaced after the subject accident, the names of the manufacturers of all replaced parts, the investigation reports, bus manual, names of the relevant repairmen, and production of the actual repaired and/or replaced parts, etc., all relevant to only one subject bus, which was repaired after Plaintiff sustained injuries when the bus suddenly and violently dropped while Plaintiff was driving the vehicle in Seacucus.

5. Peter Pan's subrogation carrier has advised that Peter Pan engaged MCI prior to Plaintiff's accident for technical service to assist with troubleshooting ongoing problems with the bus, which problems caused the bus to drop suddenly and violently downwards.

6. Peter Pan will not voluntarily schedule an inspection of the bus, produce the bus manual, produce all the relevant work orders or the complete repair history following the subject accident or otherwise assist in identifying all potential defendants, disclose whether others (including customers) were injured on the bus earlier that day or that year, while the bus was malfunctioning even before this accident, and/or provide other highly relevant discovery.

7.    Further, Peter Pan's employees have intentionally and/or negligently destroyed, spoliated, and/or lost relevant bus parts, including but not limited to a pressure sensor and/or other relevant defective part(s), and/or fraudently concealed said part(s) and/or the investigation and work orders, and other documentation related to the accident, wrongfully delayed and suppressed such relevant evidence, made fraudulent misrepresentations, and wrongfully interfered with Plaintiff's prospective economic advantage in the present suit against co-defendants.   Peter Pan's employees allege the accident was caused by a defective MCI pressure sensor and/or MCI part that caused the bus to violently drop, but claim that they intentionally and/or negligently destroyed or lost the part(s).

WHEREFORE, Plaintiff demands judgment against defendant, Peter Pan, jointly and/or severally, for compensatory damages, interest, punitive damages, costs of suit, and any other relief deemed appropriate by the court.

### SIXTH COUNT

1.    Plaintiffs repeat the allegations of the previous counts as if set forth herein at length.

2.    Plaintiff alleges that Peter Pan possesses physical and documentary evidence and access to key witnesses which are all extremely relevant to this suit and to such a degree that

that Peter Pan should be further joined to this suit for discovery purposes.

WHEREFORE, Plaintiff further seeks to implead the defendant, Peter Pan, to this action for discovery purposes.

### SEVENTH COUNT

1.   Plaintiff repeats the allegations of the previous counts as if set forth herein at length.

2.   WABCO Holdings Inc., headquartered at 1220 Pacific Drive, Auburn Hills, Michigan 48326, manufactures and sells bus parts, products, diagnostic tools and/or software.

3.   At all times relevant herein, WABCO Holdings Inc. manufactured, designed, assembled, produced, created, inspected, sold, distributed, placed into the stream of commerce, or otherwise caused the production and/or sale of bus parts, products, diagnostic tools, and/or software that were used and installed in the motor coach being operated by Plaintiff at the aforementioned time and place, which parts, upon information and belief, included **but are not limited to** bus parts in the front end, front end bellows, the kneeler, front axle, front end suspension, a pressure sensor and/or ECAS system. WABCO Holdings Inc. further manufactured and/or sold diagnostic tools and/or software which were used by Co-defendants to diagnose, service, repair, and/or maintain the subject bus and its parts.

4.    WABCO Holdings Inc owed a duty to employ reasonable care, skill and diligence in its manufacture, design, assembly, production, creation, inspection, sale, distribution of all its bus parts and/or products or otherwise cause the production and/or sale of reasonably fit, suitable, and safe products, parts, diagnostic tools, and/or software, free of defect, danger, and harm to consumers, including all bus passengers and bus drivers.

5.    WABCO Holdings Inc was so negligent and careless in some or all of these duties, and was otherwise strictly liable in tort, as to manufacture, design, assemble, produce, create, inspect, sell, distribute, place in the stream of commerce or otherwise cause the production and/or sale of bus parts, products, diagnostic tools, and/or software that were not reasonably fit, suitable, and safe for its intended or reasonably foreseeable uses, due to manufacturing defects, failure to adequately warn or instruct, and/or design defects.

6.    Plaintiff further alleges that the risks and/or dangers of the parts and/or products outweigh the product's usefulness to such a degree that a reasonably careful manufacturer or seller would not have allowed the product to be used or distributed at all in its then-present form.

7.    Plaintiff further alleges that safe and reasonably feasible alternatives to defendant's product exist such that

a reasonably careful manufacturer or seller would not have allowed the product to be used or distributed at all in its then-present form.

8.   Plaintiff further alleges that the bus parts and/or products were to defendants self-evidently not reasonably suitable and safe and fails to perform, contrary to the user's reasonable expectation that it would safely do the job for which it was manufactured and/or sold.

9.   Defendant also owed a duty to provide adequate warnings about the dangers of its bus parts, products, diagnostic tools, and/or software; to provide adequate instructions; to communicate sufficient information on the dangers of the product and how to use it safely; and to inform about dangers and/or complaints from other users, sellers, and/or distributors of any dangers of the parts and/or products to see that it is reasonably fit for the purpose for which it is intended.

10.   Defendant breached some or all of these duties to manufacture, sell and/or design a safe product without defects and to warn and/or instruct consumers. Defendant did so in a negligent and careless manner, or is otherwise strictly liable in tort for plaintiff's injuries and damages.

11.   Further, at all times relevant herein, WABCO Holdings Inc. marketed, endorsed, guaranteed, warranted

(expressly or implicitly), or otherwise placed into the stream of commerce bus parts, products, diagnostic tools and/or software that were being used and had been previously installed and/or replaced in the motor coach that Plaintiff was operating at the time of the subject accident; and/or which were used to diagnose, repair, maintain, or service said bus. WABCO Holdings, Inc. owed a duty to properly endorse, guarantee, warrantee (expressly or implicitly), or otherwise cause the sale of a reasonably fit, suitable and safe product, free of defects, danger, harm, and deleterious effects to consumers with proper instructions and warnings. WABCO Holdings Inc. was so negligent and careless in some or all of these duties, and was otherwise strictly liable in tort, as to endorse, guarantee, warrantee (expressly or implicitly), or otherwise cause the sale of an unsuitable, unsafe, defective, dangerous, harmful, and/or deleterious product, without proper warnings.

12. As a direct and proximate cause of the negligence and strict liability in tort of defendant WABCO Holdings Inc, Plaintiff sustained serious and permanent personal injuries including but not limited to his hip and back, requiring significant medical treatment and incurring significant medical expenses and lost time from his usual activities and other losses, when the motor coach he was operating suddenly and violently dropped downward.

WHEREFORE, Plaintiff demands judgment against defendant, WABCO Holdings Inc., jointly and/or severally, for compensatory damages, interest, costs of suit, and any other relief deemed appropriate by the court.

### EIGHTH COUNT

1. Plaintiff repeats the allegations of the previous counts as if set forth herein at length.

2. At or about that same time, defendants JOHN DOES 1-10 and/or ABC COMPANIES 1-10, fictitious names, manufactured, designed, assembled, produced, created, inspected, sold, distributed, placed into the stream of commerce, owned or otherwise caused the production and/or sale of bus parts, products, diagnostic tools, and/or software that were used and installed in the motor coach being operated by Plaintiff at the aforementioned time and place, which parts, upon information and belief, included **but are not limited to** bus parts in the front end, front end bellows, the kneeler, front axle, front end suspension, a pressure sensor (part number 04-31-1044, upon information and belief), and/or an ECAS system. Defendants JOHN DOES 1-10 and/or ABC COMPANIES 1-10 further diagnosed, repaired, maintained, or serviced the subject bus prior to the accident.

3. JOHN DOES 1-10 and/or ABC COMPANIES 1-10 owed a duty to employ reasonable care, skill and diligence in its

manufacture, design, assembly, production, creation, inspection, sale, distribution of all its bus parts, products, diagnostic tools, and/or software or otherwise cause the production and/or sale of reasonably fit, suitable, and safe products, free of defect, danger, and harm to consumers, including all bus passengers and bus drivers. Defendants JOHN DOES 1-10 and/or ABC COMPANIES 1-10 further owed a duty to exercise reasonable caution and safety in diagnosing, repairing, maintaining, or servicing the subject bus.

4.   Defendants JOHN DOES 1-10 and/or ABC COMPANIES 1-10 were so negligent and careless in some or all of these duties, and was otherwise strictly liable in tort, as to manufacture, design, assemble, produce, create, inspect, sell, distribute, place in the stream of commerce, own, or otherwise cause the production and/or sale of bus parts, products, diagnostic tools, and/or software that were not reasonably fit, suitable, and safe for its intended or reasonably foreseeable uses, due to manufacturing defects, failure to adequately warn or instruct, and/or design defects. Defendants JOHN DOES 1-10 and/or ABC COMPANIES 1-10 further negligently diagnosed, repaired, maintained, or serviced the subject bus.

5.   Plaintiff further alleges that the risks and/or dangers of the bus parts, products, diagnostic tools, and/or

software outweigh the product's usefulness to such a degree that a reasonably careful manufacturer or seller would not have allowed the product to be used or distributed at all in its then-present form.

6.   Plaintiff further alleges that safe and reasonably feasible alternatives to defendant's product exist such that a reasonably careful manufacturer or seller would not have allowed the product to be used or distributed at all in its then-present form.

7.   Plaintiff further alleges that the bus parts, products, diagnostic tools, and/or software were to defendants self-evidently not reasonably suitable and safe and fails to perform, contrary to the user's reasonable expectation that it would safely do the job for which it was manufactured and/or sold.

8.   Defendants also owed a duty to provide adequate warnings about the dangers of its bus parts, products, diagnostic tools, and/or software; to provide adequate instructions; to communicate sufficient information on the dangers of the product and how to use it safely; and to inform about dangers and/or complaints from other users, sellers, and/or distributors of any dangers of the parts and/or products to see that it is reasonably fit for the purpose for which it is intended.

9.   Defendant breached some or all of these duties to manufacture, sell and/or design a safe product without defects and to warn and/or instruct consumers. Defendant did so in a negligent and careless manner, or is otherwise strictly liable in tort for plaintiff's injuries and damages.

10.  As a owner of the bus, the Defendant further failed to properly maintain, service and repair the bus.

11.  As a direct and proximate cause of the negligence and strict liability in tort of Defendants JOHN DOES 1-10 and/or ABC COMPANIES 1-10, Plaintiff sustained serious and permanent personal injuries including but not limited to his hip and back, requiring significant medical treatment and incurring significant medical expenses and lost time from his usual activities and other losses, when the motor coach he was operating suddenly and violently dropped downward.

WHEREFORE, Plaintiff demands judgment against Defendants JOHN DOES 1-10 and/or ABC COMPANIES 1-10, jointly and/or severally, for compensatory damages, interest, costs of suit, and any other relief deemed appropriate by the court.

### JURY DEMAND

TAKE NOTICE that plaintiff hereby demand trial by jury on all issues so triable.

<u>**DEMAND FOR ANSWERS TO UNIFORM INTERROGATORIES
FORM C & C1/C2**</u>

Plaintiff demands answers to Uniform Interrogatories Form C & C1/C2, as applicable, from **<u>each</u>** Defendant.

<u>**DEMAND FOR DISCOVERY OF INSURANCE**</u>

Plaintiff demands, from **<u>each</u>** Defendant, a complete certified copy of **<u>all</u>** insurance policies, effective at the time of the accident, including but not limited to, any and all commercial lines, personal lines, general liability, excess, and umbrella policies.

<u>**DEMAND FOR DESIGNATED CORPORATE AGENTS**</u>

Plaintiff demands that Defendant designate each "officers, directors, or managing agents, or other persons who consent to testify" on behalf of defendants, pursuant to <u>R.</u> 4:14-2(c) and <u>R.</u> 4:15-1.

<u>**CERTIFICATION**</u>

I certify that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding. I further certify that the plaintiffs have no knowledge of any contemplated action or arbitration proceeding regarding the subject matter of this action, and they are not aware of any parties who should be joined in this action. I further certify that the foregoing

statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ Katherine G. Houghton

DATED:  December 3, 2021
_____
KATHERINE G. HOUGHTON, ESQ.
Attorney for plaintiff


### DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, the undersigned is hereby designated as trial counsel for plaintiffs.

/s/ Katherine G. Houghton

DATED:  December 3, 2021
_____
KATHERINE G. HOUGHTON, ESQ.
Attorney for plaintiff

KATHERINE G. HOUGHTON, ESQ. (02690-1983)
LAW OFFICE OF KATHERINE G. HOUGHTON
87 S Farview Ave Ste 2
Paramus, NJ  07652-2656
(201) 587-1414
Attorney for Plaintiff

|  |  |
|---|---|
| NICHOLAS ELEZOVIC,<br><br>Plaintiff,<br><br><br><br>vs.<br><br>MOTOR COACH INDUSTRIES, INC., PETER PAN BUS LINES INC., WABCO HOLDINGS INC., JOHN DOES 1-10 (fictitious names), and ABC COMPANIES 1-10 (fictitious names),<br><br>Defendants. | : SUPERIOR COURT OF NEW JERSEY<br>: LAW DIVISION:  HUDSON COUNTY<br>: DOCKET NO. HUD-L<br>:<br>:<br>:<br>:<br>:<br>:<br>: **FIRST NOTICE TO PRODUCE**<br>:           **DOCUMENTS**<br>:<br>:<br>: **SERVED WITH SUMMONS &**<br>:           **COMPLAINT**<br>:<br>: |

TO:  PETER PAN BUS LINES INC.
    **SERVED WITH SUMMONS & COMPLAINT**

PLEASE TAKE NOTICE that in accordance with the Rules of Civil Practice and Procedure, you are to produce at the law offices of Katherine G. Houghton 87 S Farview Ave. Ste 2, Paramus, New Jersey, within thirty-five days (35) of the date of this notice, the following documents.  **This request is being made of the PETER PAN BUS LINES INC. and its insurance company representatives, legal representatives and any other representatives having information, knowledge and/or documents requested herein:**

**DEFINITIONS:**  "the subject bus" shall refer to the bus that Plaintiff was driving on 12/15/19 when the accident occurred, which has been identified by Peter Pan as coach 785.

1.  Complete, signed copy of the employee first report of injury.

2.    Copies of any and all work orders for any repairs, inspections, and/or services performed on the subject bus after the accident on 12/15/19, inclusive of 12/15/19.

3.    Copies of any and all work orders for any repairs, inspections, and/or services performed on the subject bus preceding the accident on 12/15/19.

4.    Copies of any and all passenger lists of all customers who rode the subject bus on 12/15/19.

5.    Copies of any and all incident, injury, investigation and/or accident reports in connection with any injuries sustained by any passengers or customers riding the subject bus on 12/15/19.

6.    Copies of any and all bus manuals, training manuals, driver's manual, operating manuals relative to the subject bus.

7.    Copies of any and all title documents, equipment lease documents, or any other document showing ownership of the subject bus.

8.    Copies of any and all inspection reports conducted by any state or federal agency in connection with the subject bus from 1/1/2013 to present.

9.    Copies of any and all inspection reports conducted by Defendant in connection with the subject bus from 1/1/2013 to present.

10.   Copies of any and all road test reports conducted by Defendant in connection with the subject bus from 1/1/2013 to present.

11.   Copies of any and all inspection reports conducted by Co-defendants, including but not limited to MCI, in connection with the subject bus from 1/1/2013 to present.

12.   Copies of any and all inspection reports conducted by any third parties in connection with the subject bus from 1/1/2013 to present.

13. Copies of any and all "Activities Common Work" reports for the subject bus from 1/1/2013 to present.

14. Copies of any and all "Job Cards" for the subject bus from 1/1/2013 to present.

15. Copies of any and all "driver vehicle inspection reports (DVIR)" for the subject bus from 1/1/2013 to present.

16. Copies of any and all invoices for parts replaced in connection with repairs, inspections, and/or services in connection with the work on the subject bus reflected on Job Cards: U 272968 on 5/15/2018, U 276407 on 7/31/2018, U 279100 on 10/2/2018, U 279435 on 10/11/2018, U 279486 on 10/13/2018, U 280129 on 10/30/2018, U 280912 on 11/14/2018, U 283517 on 2/17/2019, U 285457 on 4/14/2019, U 286162 on 5/10/2019, U 288153 on 7/18/2019, U 288268 on 7/23/2019, S 173687 on 8/1/2019, U 288980 on 8/14/2019, U 289027 on 8/19/2019, U 289328 on 8/27/2019, U 292097 on 11/22/2019, U 292656 on 12/10/2019, S 174709 on 12/11/2019, and U 293414 on 1/1/2020.

17. Copies of any and all documents reflecting the routes the subject bus travelled from 12/15/19 to 1/1/2020. If the bus was not in service, please so indicate.

18. Copies of any and all emails to and from Michael D. Cohen related to Plaintiff's accident on 12/15/19.

19. Copies of any and all emails to and from any of Defendant's employees related to Plaintiff's accident on 12/15/19.

20. Copies of any and all reports, investigations, and/or any other documents filed by Michael D. Cohen related to Plaintiff's accident on 12/15/19.

21. Copies of any and all reports, investigations, and/or any other documents filed by any of Defendant's employees related to Plaintiff's accident on 12/15/19.

22. Copies of any and all documents maintained by Human Responses Department in connection with Plaintiff's accident on 12/15/19.

23. Copies of any and all documents filed by Mr. Gulib (Mechanic) in connection with his inspection, servicing, repair, and/or "check" of bus after Plaintiff's accident on 12/15/19.

24. Copies of any and all incident reports or other documents reflecting mechanical problems reported by Defendant's employees with the bus on 7/17/19 and 8/13/19, which resulted in inspections, repairs, and/or servicing of the subject bus.

25. Copies of any and all documents reflecting all times MCI provided technical service to assist with troubleshooting inspections, repairs, and/or servicing of the subject bus.

26. The actual broken and/or defective parts that were replaced after Plaintiff's accident on 12/15/19.

27. Copies of any and all photographs taken after Plaintiff's accident on 12/15/19, whether taken of the bus, of bus parts, of Plaintiff, of injured passengers who rode the subject bus earlier that day, and/or any other photographs taken after the accident on 12/15/19 for any other reason related to the subject of Plaintiff's complaint.

28. Copies of any and all statements made by any person, any witness, and any eyewitnesses having anything to do with plaintiff's injuries on 12/15/19.

29. Copies of any and all statements made by any person, any witness, and any eyewitnesses having anything to do the repairs, servicing, and/or inspecting the subject bus from 2018 to present in connection with complaints that the front end, front axle, suspension, ECAS, bellows, kneeler or other part was causing the subject bus to drop, dip, and/or bounce.

30. Copies of any and all depositions and trial exhibits in connection with this suit and/or any other suit against defendant involving injuries sustained by anyone on the subject bus since 2013.

31. Copies of any and all motor vehicle accident reports in which the subject bus was involved since 2013.

32.    Copies of any and all correspondence between or amongst defendant and any of the codefendants in connection with plaintiff's accident.

33.    Copies of any and all books, medical publications, treaties, commentaries, reports, statutes, codes, ordinances, rules, regulations or other published documents intended to be used at the time of trial or referred to, utilized, or relied upon by any expert witness on behalf of defendant.

34.    Copies of any and all written reports, as well as a copy of the Curriculum Vitae, of any and all experts that have supplied reports to the defendant or defendant's attorneys, whose testimony will be offered at the time of trial.

35.    Copies of any and all documents and tangible items intended to be utilized for any purpose at the time of trial including, but not limited to those intended to be admitted into evidence or used to cross examine or refresh a witness's recollection.

36.    Copies of any and all written reports rendered by defendants and/or defendants' proposed expert witnesses including, but not limited to, any medical expert witnesses intended or not intended to be called at the time of trial.

37.    Copies of any and all diagrams, blueprints, charts, drawings, graphs, maps, plates, plans, photographs, models or other visual reproductions of any object, place or thing prepared or utilized, referred to or relied upon by defendants and/or any expert witnesses on behalf of defendants.

/s/ Katherine G. Houghton

DATED:  December 3, 2021    _____
                           KATHERINE G. HOUGHTON, ESQ.
                           Attorney for plaintiff

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-004699-21

**Case Caption:** ELEZOVIC NICHOLAS  VS MOTOR COACH INDUSTRI ES, IN

**Case Initiation Date:** 12/06/2021

**Attorney Name:** KATHERINE GRACE HOUGHTON

**Firm Name:** KATHERINE G. HOUGHTON

**Address:** 87 S FARVIEW AVE STE 2

PARAMUS NJ 07652

**Phone:** 2015871414

**Name of Party:** PLAINTIFF : Elezovic, Nicholas

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** PRODUCT LIABILITY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** YES

**If yes, list docket numbers:** WC-2021-6038

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: Nicholas Elezovic?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO

    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO

    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

| | |
|---|---|
| 12/06/2021 | /s/ KATHERINE GRACE HOUGHTON |
| Dated | Signed |